UNITED STATES DISTRICT COURT        FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GORDON MORGAN,                                    MEMORANDUM
                                                  AND ORDER
        Petitioner,

    v.                                           06 CV 1247 (JG)

UNITED STATES OF AMERICA,

        Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

A P P E A R A N C E S:

    GORDON MORGAN
        Reg. # 16756-112
        Allenwood FCI
        P.O. Box 1000
        White Deer, PA 17887-1000
        Petitioner, *pro se*

    BENTON J. CAMPBELL
        United States Attorney
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, NY 11201
    By:   Carolyn Pokorny
        Assistant U.S. Attorney

JOHN GLEESON, United States District Judge:

        Gordon Morgan moves pursuant to 28 U.S.C. § 2255 to set aside his conviction. For the reasons set forth below, the motion is denied.

## BACKGROUND

        Morgan was the leader of a marijuana distribution organization that shipped wholesale quantities of marijuana from California to New York City in 2000 and 2001. Morgan and his employees shipped the marijuana via UPS in packages that listed "Appliance World," a

fictitious business, as the sender and "Liberty Images," Morgan's front business in Manhattan, as the recipient. Once the packages arrived in Manhattan, Morgan's employees transported them to an apartment in Brooklyn for distribution to the organization's customers. Investigators recovered more than 100 kilograms of Morgan's marijuana during the course of the investigation.

Morgan was arrested together with his wife, Simone Morgan, on April 11, 2001, at their California home. Following the arrest, Simone Morgan admitted that she and her husband had been involved "intermittently" in with shipping and selling marijuana since 1993 or 1994. She stated that her husband would buy the marijuana in California for $650 per pound and sell it in New York for $1,000 per pound. Simone further stated that Morgan had arranged to ship between eight to ten packages of marijuana, two or three times each week. Investigators had intercepted several of these parcels, and each contained between 18 and 46 pounds of marijuana. Simone Morgan was arrested and indicted along with her husband, but following her arrest she became a fugitive.

Morgan was charged in a two-count superseding indictment alleging conspiracy to distribute and to possess with intent to distribute marijuana and distribution of marijuana. The charges tracked the statutory language, and did not allege a specific quantity of marijuana. Neither charge carried a mandatory minimum or an enhanced maximum sentence.

Morgan entered into a written plea agreement permitting him to plead guilty to the conspiracy charge in satisfaction of both counts. Under paragraph two of the agreement, Morgan stipulated to the government's Guidelines estimate, which included a base offense level based on a drug quantity of between 700 and 1,000 kilograms of marijuana. Paragraph two further stated as follows:

> 2. ... The Office estimates the likely adjusted offense level under the Sentencing Guidelines to be level 28, which is predicated on the following Guidelines calculation:
>
> | | |
> |---|---|
> | Base Offense Level (2D1.1(c)(5)) | 30 |
> | Plus: Aggravating Role (3B1.1(a)) | + 2 |
> | Less: Acceptance of Responsibility (3E1.1(b)) | - 3 |
> | Less: Global Disposition | - 1 = |
> | Adjusted Offense Level | 28[1] |
>
> This level carries a range of imprisonment of 97 to 121 months, assuming that the defendant falls within Criminal History Category III. *The defendant agrees to this Guidelines calculation and agrees not to dispute or seek a <u>Fatico</u> hearing with respect to the above-listed stipulation Guidelines*.

(Plea Agreement ¶ 2) (emphasis added).

The agreement also contained a waiver provision, set forth in paragraph 4:

> 4. The defendant will not (a) challenge the findings contained in the laboratory report or (b) *file an appeal or otherwise challenge the conviction or sentence in the event that the Court imposes a sentence of imprisonment of 121 months or below*. This waiver is binding on the defendant even if the Court employs a Guidelines analysis different from that set forth in paragraph 2.

*Id*. at ¶ 4 (emphasis added).

---

[1] Morgan originally was charged in an indictment together with six co-defendants. He subsequently was charged in a superseding indictment, which named only his wife and him. The government consented to a "global disposition" reduction of one level for all the defendants named in Morgan's original indictment (except his fugitive wife), all of whom pled guilty either prior to or on the same date Morgan did.

3

On June 26, 2002, Morgan pled guilty to Count One pursuant to the plea agreement before United States Magistrate Judge Steven M. Gold. Morgan acknowledged that he had read the agreement and signed it, and that he had no questions about it. Tr. June 26, 2002 at 36. Judge Gold advised Morgan of the possible penalties authorized for the charge, including a prison sentence of up to 20 years. *Id*. at 38. Judge Gold then turned to the stipulated Guidelines range set forth in the plea agreement:

> THE COURT: Then I want to turn your attention to what we call the sentencing commission guidelines which are rules that Judge Gleeson would be required to consider and apply where within the zero to twenty year range authorized by statute your specific sentence, Mr Morgan, should be set. Have you had a chance to talk to your attorney, Mr. Leemon, about the guidelines and how Judge Gleeson is likely to apply them to you?
>
> THE DEFENDANT: Yes.
>
>    *   *   *
>
> THE COURT: The prosecutor's estimate of the guideline range is 97 to 121 months. That does not bind Judge Gleeson. He could conclude that an even longer guideline range could be applied in your case. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Even after the Judge decides what the guideline range should be, he might find that there are special circumstances in your case that merit a sentence either above or below the guideline range that he calculates. *You have agreed to the guideline calculation in your plea agreement but you are not precluded by the terms of the agreement from seeking downward departure.*
>
> THE PROSECUTOR: Correct.
>
> THE COURT: *Do you understand that?*
>
> THE DEFENDANT: *Yes, I do*.

> THE COURT  Of course, you're not guaranteed that Judge Gleeson
> will grant you one.   It will rest with him.   Do you understand that?
>
> THE DEFENDANT:  Yes, I do.

*Id.* at 41-42 (emphasis added).

Judge Gold then reviewed with Morgan the appellate waiver provision of the plea agreement:

> THE COURT:  If you receive a prison sentence of 121 months or less, no matter how Judge Gleeson calculates [your Guidelines range], you will have no right to take any appeal from any aspect of this case.   Even if your prison sentence exceeds 121 months in length you will have no right to change your mind about pleading guilty.   You will have no right to challenge the legality of your conviction or the judgment of guilty.   The only rights you would retain, even if your prison sentence is longer than 121 months, is to take an appeal to a higher Court and ask it to direct Judge Gleeson to impose a shorter prison sentence.   That's the only right you would retain.
>
> If Judge Gleeson decides to impose a sentence below the guideline range and the prosecutor objects to it, the prosecutor could take an appeal to a higher Court and ask the higher Court to direct Judge Gleeson to impose sentence within the guidelines.   Do you understand that?
>
> THE DEFENDANT:   Yes.

*Id*. at 42-43.

The PSR calculated an offense level of 31 (PSR ¶ 31), premised on:  a base offense level of 30 for a scheme involving 700 to 1,000 kilograms of marijuana; a four-level role adjustment for being an organizer of five or more participants under U.S.S.G. § 3B1.1(a); less three levels for acceptance of responsibility.   In Criminal History Category III, the PSR reflected a sentencing range of 135-168 months.

Morgan objected to the Presentence Report on two grounds:  (1) he contended that

a two-level enhancement for aggravating role, rather than four, was appropriate; and (2) he sought an additional one-level reduction for the global disposition, as provided in the plea agreement. Thus, Morgan argued, the applicable adjusted offense level was 28, carrying a sentencing range of 97-121 months, as stipulated in the parties' agreement. *Id*. Morgan sought downward departures for his various medical conditions, which included being HIV positive and partially paralyzed, and for having provided substantial assistance to the government.

The prosecutor agreed that Morgan should receive the one-level reduction for contributing to the global disposition of the case. With respect to the role adjustment, the prosecutor stated that she was abiding by the plea agreement's estimate of a two-level, rather than a four-level, increase.

Addressing Morgan's downward departure motions, the government stated that it would not be submitting a Section 5K1.1 motion.[2] The government argued that the other bases for departure, standing alone, did not warrant one. However, the government acknowledged that the Court had the authority, in its discretion, to grant a departure on the ground that the combination of factors created a situation outside the heartland.

---

[2] The government explained that Morgan's efforts to cooperate, which began with a proffer approximately a month before he pled guilty, did not rise to the level of substantial assistance. Also, according to the government, Morgan had lied to the government and had taken steps to ensure he could not assist in determining the whereabouts of his fugitive wife.

Defense counsel submitted a letter seeking downward departures based on post-offense rehabilitation and extraordinary acceptance of responsibility. Also, defense counsel moved to compel the government to file a 5K1.1 letter, stating that the U.S. Attorney's Office, but not the individual prosecutor, had acted in bad faith. At sentencing, I rejected the motion to compel the filing of a Section 5K1.1 letter on the ground that no unconstitutional motive was even alleged, let alone established. As for the other issues at sentencing, I agreed that there ought to be only a two-level upward role adjustment and that a one-level benefit for global disposition was appropriate. The resulting adjusted offense level was 28, which was what the parties had stipulated to in the plea agreement. I sentenced Morgan primarily to a 97-month term of imprisonment.

Morgan appealed, arguing that (1) because the indictment did not specify a drug quantity and he did not allocute to a quantity during his guilty plea, *Apprendi v. New Jersey*, 530 U.S. 466 (2000), dictated that his sentence could not lawfully exceed the five-year statutory maximum set forth in 21 U.S.C. § 841(c)(1)(C); (2) the government's denial of a § 5K1.1 letter because Morgan refused to disclose his wife's whereabouts, at a time when her capture would have left his children unattended, amounted to improper interference with the parent-child relationship; (3) his defense attorney was ineffective for failure to secure a cooperation agreement for Morgan; and (4) the appeal waiver provision of the plea agreement was invalid, because of the nature of his appellate claims and a purported deficiency in the plea colloquy.

In a decision dated October 7, 2004, the Second Circuit agreed with the government's argument that the record "clearly demonstrate[s] that Morgan's acceptance of the waiver provision [in his plea agreement] was knowing and voluntary." *United States v. Morgan*, 386 F.3d 376, 380 (2d Cir. 2004) (internal quotation marks and citation omitted) ("*Morgan I*").

7

Accordingly, the Court did not reach the merits of Morgan's *Apprendi* claim, finding that the waiver provision foreclosed his right to appeal on that ground. *Id*.

Next, the Court rejected Morgan's claim that the government's demand for information concerning his wife's whereabouts, at a time when her capture would have left his children unattended, amounted to unconstitutional interference with the parent-child relationship. The Court observed that Morgan had failed to allege that the government acted with an unconstitutional motive. Similarly, the Second Circuit found he failed to demonstrate on appeal that his sentencing proceedings were infected by any such motive. *Morgan I*, 386 F.3d at 382-83.

Finally, because of an aversion to resolving ineffectiveness claims on direct review, the Second Circuit declined to consider Morgan's ineffective assistance claim, noting that he was free to pursue such a claim in a § 2255 petition. *Morgan I*, 386 F.3d at 383.

The Second Circuit held the *Morgan I* mandate pending the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). *Morgan I*, 386 F.3d at 382-83. Following those decisions, the Second Circuit held that Morgan's appeal waiver was enforceable against any *Booker* claims. *United States v. Morgan*, 406 F.3d 135, 138 (2d Cir. 2005) ("*Morgan II*").

## DISCUSSION

Morgan seeks relief based on claims of ineffective assistance of counsel and of a violation of his right to have the specific quantity of marijuana charged in the indictment. As discussed below, neither contention has merit.

The Supreme Court has established the following standard for claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was

8

> deficient. This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment. Second, the
> defendant must show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial whose result
> is reliable. Unless a defendant makes both showings, it cannot be
> said that the conviction ... resulted from a breakdown in the
> adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, to make out this type of claim, the petitioner must demonstrate both (1) that his attorney's performance "fell below an objective standard of reasonableness," *id.* at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

In assessing whether counsel's performance was deficient, judicial scrutiny "must be highly deferential," and the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted); *accord Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998); *see also Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*) ("[C]ounsel has wide latitude in deciding how best to represent a client. . . ."). The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct," *Wiggins v. Smith*, 539 U.S. 510, 521 (2003), instead emphasizing that "'[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms,'" *id.* (quoting *Strickland*, 466 U.S. at 688), which requires "a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Wiggins*, 539 U.S. at 523 (quoting *Strickland*, 466 U.S. at 689).

To establish the required "reasonable probability" that counsel's errors changed the

outcome of the case, the petitioner must show not just "some conceivable effect," *Strickland*, 466 U.S. at 693-94, but rather "a probability sufficient to undermine confidence in the outcome," *id*. at 694. This determination, unlike the determination whether counsel's performance was deficient, may be made with the benefit of hindsight. *Lockhart v. Fretwell*, 506 U.S. 364, 371-73 (1993).

Morgan claims that counsel was ineffective in two ways. First, counsel failed, Morgan claims, to make him aware that he was "waiving substantial rights under the Supreme Court's ruling in *Apprendi v. New Jersey*" when he pled guilty. Morgan's Mem. at 7. The specific *Apprendi*-related defect Morgan complains about is the fact that the indictment "failed to properly charge a specific drug quantity as an element of the offense," rendering the indictment "defective." Petition at 5 (Ground Three). According to Morgan, even though he allocuted to a 20-year maximum sentence and stipulated to a Guidelines range of 97-121 months, he actually faced only a five-year maximum sentence because the indictment did not specify that his offense involved more than 100 kilograms of marijuana. Second, Morgan asserts that counsel was ineffective in failing to obtain a "substantial assistance" motion from the government, which would have authorized a downward departure for cooperation. *Id.* (Ground Two).

Morgan's attorney did not fall below the objective reasonableness standard established by *Strickland*. This is true even assuming the truth of Morgan's claim that his attorney failed to discuss with him *Apprendi*'s effect on the indictment in this case. First, Morgan relies heavily on a Second Circuit decision for the proposition that when an indictment fails to specify drug quantity, a defendant cannot be sentenced to a term of imprisonment greater than maximum sentence permissible under 21 U.S.C. § 841(b)(1)(C) for unspecified quantities. *See* Morgan Mem. at 11-15 (citing *United States v. Cordoba-Murgas*, 422 F.3d 65 (2d Cir. 2005) (when defendant is indicted under 21 U.S.C. § 841(a) without a specified quantity of drugs, an

10

allocution to a particular quantity of drugs cannot serve to waive the failure to indict him for the separate crime of violating § 841(a) with a particular quantity of drugs)). Morgan apparently contends that his counsel should have advised him that, pursuant to principles set forth in *Cordoba-Murgas*, he could not have received more than five years in prison because the indictment did not specify the amount of marijuana involved in his offenses.

The argument fails for several reasons. First, Morgan pled guilty in June of 2002, when the legal principles he relies on in his petition were not yet established. More than three years would pass before the Second Circuit would combine two "lines of precedent" to answer a question the court had "never squarely addressed." *Cordoba-Murgas*, 422 F.3d at 69. Morgan can hardly be faulted for seeking support in the court's 2005 holding, but neither can his counsel be faulted for failing, back in 2002, to predict it.

Another reason Morgan's counsel cannot reasonably be criticized is a more practical one, and it arises out of the fact that Morgan was indicted on two counts, not one. Even if, as Morgan now contends, counsel should have advised him that the maximum sentence he could get was five years, it would have been five years *per count*. And the then-mandatory Guidelines would have required consecutive sentences to the extent necessary to reach a sentence within the range. *See* U.S.S.C. § 5G1.2(d); *United States v. McLeod*, 251 F.3d 78, 83-84 (2d Cir. 2001). Put another way, if Morgan chose not to plead guilty, nothing would have prevented the government from seeking the 97-month prison term Morgan later received. It also could have pursued the additional charges it agreed not to bring in exchange for Morgan's plea of guilty. *See Morgan I*, 386 F.3d at 381 ("Morgan reaped substantial benefits under his plea agreement," including "the government's commitment not to bring additional charges against him for certain crimes occurring between 1997 and 2001 within a four-state geographic area.").

Third, counsel's performance cannot be evaluated without considering Morgan's decision to cooperate with the government and to seek a substantial assistance motion pursuant to U.S.S.C. § 5K1.1. It would have made little strategic sense in June of 2002, when Morgan pled guilty, to challenge the indictment as defective. Morgan's goal was to stipulate to a 97-121 month range (based on more than 700 kilograms of marijuana) and to get a downward departure from that range based on his cooperation. While his counsel conceivably could have foreseen the *Cordoba-Murgas* holding and then insisted that the prosecutor obtain a superseding indictment specifying that the offense involved more than 100 kilograms of marijuana, he can hardly be blamed for deciding not to put the government through those paces when his goal was to have the government embrace his client as a cooperator.

Morgan's motion also fails to satisfy the second prong of the *Strickland* test. For all of Morgan's complaining about his counsel's failure to anticipate the holding of *Cordoba-Murgas* when he advised Morgan about pleading guilty, Morgan has never sought to withdraw his plea. Indeed, he told the Second Circuit in 2005 that he did not want to withdraw his plea, *Morgan II*, 406 F.3d at 136 n.1, and he does not seek such relief on this petition. Thus, it can hardly be said that, but for counsel's alleged ineffectiveness, Morgan would not have pled guilty. Morgan himself does not even make that argument. Rather, the relief he seeks here is a vacatur of the indictment.

This aspect of Morgan's motion places in clear relief that his complaint is not so much with his counsel's performance as it is with the fact that he cannot now obtain an application of the *Apprendi* rule to his indictment or sentence. And indeed, ground three of his petition alleges a substantive violation of the *Apprendi* rule in that Morgan's indictment failed to specify a quantity of marijuana. Though Morgan was facing two five-year counts and stipulated to a

97-121 month range upon pleading guilty, he now seeks a complete dismissal of both charges because the indictment did not specify an amount of marijuana. In my view, there is nothing in the jury trial right or the right to due process of law that would dictate such a result. But the request is procedurally defective as well. The Second Circuit has already held that Morgan bargained away any right to assert such a claim on direct review. *See Morgan II*, 406 F.3d at 137-38. If that negotiated waiver has any meaning, it must also preclude Morgan from raising in a collateral challenge the arguments he agreed not to raise via a direct appeal. And finally, even if Morgan had not waived the argument in his plea agreement, the Second Circuit has made it clear that *Apprendi*-based arguments are inapplicable to cases on collateral review. *See Coleman v. United States*, 329 F.3d 77, 82 (2d Cir. 2003). Thus, Ground Three of the petition has no merit.

        The second respect in which Morgan claims his lawyer was ineffective is in failing to secure a substantial assistance motion from the government. This argument is frivolous. Though Morgan wanted to cooperate, and first met with the government for that purpose about a month before his guilty plea, the government did not execute a cooperation agreement with him. Even if it had, the prosecutor's conclusions that Morgan lied during his debriefings and took steps to ensure that his fugitive wife would remain a fugitive destroyed Morgan's hope for a § 5K1.1 motion. There is nothing to suggest that the government had an unconstitutional motive, *see Wade v. United States*, 504 U.S. 181, 185-87 (1992) (absent an unconstitutional motive such as discrimination based on race or religion, prosecutor who has no contractual obligation to make substantial assistance motion has broad discretion to decline to make motion), or acted in bad faith, *see, e.g.*, *United States v. Rexach*, 896 F.2d 710, 713-14 (2d Cir. 1990) (even where cooperation agreement has been executed, the prosecutor's dissatisfaction with defendant's cooperation justifies withholding § 5K1.1 absent a showing by the defendant that the prosecutor acted in bad

faith).

## CONCLUSION

For the foregoing reasons, the motion is denied. Because there is no substance to any of the claims, no certificate of appealability shall issue.

So ordered.


John Gleeson, U.S.D.J.


Dated:      May 1, 2009
               Brooklyn, New York